Skiba v. Canadian National Railway Company. Mr. Colwin. May it please the Court. My name is Jeffrey Colwin and I represent the plaintiff, Mark Skiba. Reasonable jurors could find from Mark Skiba's evidence that Illinois Central Railroad did not honestly believe the reasons that it gave for rejecting him for management positions to which he applied within the limitations period. The evidence included shifting explanations for the reasons why Skiba's management position was eliminated, conflicting testimony and inexplicable ratings given to Skiba during interviews for positions that occurred within the limitations period, statements made by decision makers that, when combined with evidence of dishonesty, would permit reasonable jurors to infer unlawful motive, the unlawful motive of retaliation and the unlawful motive of discrimination. Irrational hiring decisions, including hiring individuals who, unlike Skiba, were not qualified for the positions that they were given, who had been previously demoted, who were responsible for causing prior safety violations and discipline. Unlike Skiba, who at the time that he applied for these positions had a solid work record with Illinois Central, no discipline, much more experience and was never demoted. There is conflicting testimony from HR employees about the employment practices and the hiring procedures that Illinois Central used. There are significant unexplained deviations from stated employment practices and there is significant evidence of systematically better treatment of employees who, unlike Skiba, did not oppose and did not complain to HR about unlawful employment practices. Where did Mr. Skiba complain about unlawful employment practices as opposed to just arbitrary bullying, bad management by his manager? Sure. In two emails he referenced it specifically. And when were those? October of 2012, I think it was October 14th of 2012, the day before he got a letter about his performance. And then on March 27th of 2013, after he applied for position 2561, he sends an email stating that he believes that prior retaliatory acts are preventing him from obtaining a management position in the time period. Okay, maybe I'm not being clear. When does he specifically inform HR that he believes he's been a victim of age discrimination or national origin discrimination? In October of 2012. Okay, do we have that email? Sure. I'm sorry, this is page 9 of the opening brief. Yeah. On October 14th, 2012, Skiba emailed HR a formal complaint in which he alleged a continual hostile work environment, retaliation for previous complaints, as well as testimony requested by HR. Okay, how did he do that? How does that qualify as protected activity under federal employment law? Under Coleman and other decisions of this court, what is required for protected activity is if Skiba reasonably and sincerely believes that what he is reporting is opposing unlawful conduct. No, no, no, but you've got to make it clear that what you're opposing, you've got to make it clear to the recipient that you're talking about unlawful conduct. And I don't see that here. Maybe he thought this was illegal, but I don't see any indication here that this would be illegal, that the reader of that would say, oh, he's complaining about something that would violate federal law. There's no reference to age or national origin? There is no reference to age or national origin in the October 14th, 2012 email. He does reference retaliation for assisting HR. Right, but he had to reference age or national origin to make the claim that he's making now. Correct. For retaliation. He did not do so, so there's no protected activity to support your retaliation claim. I hear your point on that, Judge. I would point you to two other places in the record where I believe that that standard has been met. In March of 2013, he emails about a letter that is being kept in his file that he believes is retaliatory for participating with HR, that is preventing him from getting a job. In February, a month before that, the record reflects that he emails C.N. Director Vojtacek and tells him that he believes that he may be in a protected class. Age Discrimination Act of 1967. He says it explicitly. He says I may be in a protected class. Correct. All right. Are you still pursuing the national origin argument? We raised the national origin argument on appeal on the grounds that it was dismissed on summary judgment for a comparator issue, but the primary focus of this case, in my view, is retaliation. Do we need to address the national origin claim? No. It seems exceedingly weak. Okay, thank you. No. And to Your Honor's point about what Coleman says, it is clear from Skiba's testimony and all of the evidence that what he reasonably and sincerely believed he was doing was opposing unlawful conduct under federal law. His complaints were made under... I get that, but Coleman didn't deal with a problem, didn't deal with a plaintiff who had failed to articulate a claim under federal employment law. It had to do with whether the claim is valid or not. And that's well established with respect to retaliation law. But pure subjective belief that your rights have been violated, if not communicated to the employer, does not get you protected activity? Fair enough, Judge. However, I would point out that by the time Skiba was making his complaints in October of 2012 about a hostile work environment, he was referring about his manager, Claremont. And that was the manager that he had reported to HR. And when you are reporting to HR a hostile work environment from a manager for whom you have previously reported, that is clear that that should be protected activity. Why? Lots of bosses are equal opportunity jerks, right? And that's not a violation of federal law. True. However, if he believes that he was subject to the hostile work environment based on a prohibited factor like his age or his lawful conduct and opposing unlawful work practice, then it would be protected activity. Based purely on his subjective belief, not communicated to the employer? Yes. And you get that from which cases? Well, I read it in Coleman. I understand that you read it differently and distinguish it on those grounds. And that's fair, too. But clearly, all of the evidence in the record shows that what Skiba was trying to do in this case was to protect his co-workers and himself. From age discrimination? Well, he was clearly trying to protect himself from age discrimination. But he didn't communicate that to anybody. So he didn't engage in protected activity. If it's just in his head, it doesn't count. Fair enough, Judge Sykes. However, he does say to his supervisor in February of 2012, I may be a member of the protected class under the Age Discrimination Act of 1967. And if those are magic words that need to be stated in order to confer his complaint to be protected activity, then he said them. Skiba can clearly allege a claim of retaliation based on a pattern of retaliatory conduct which also occurred here. One of the unusual facts about this case, counsel, is just the sheer number of decisions that are at issue from the time his position was eliminated. But your theory seems to require us or a jury to infer that there was kind of a company-wide conspiracy or agreement to discriminate against him on the basis of age, doesn't it? I wouldn't say it that way, Judge. I don't believe that we've attempted or need to prove a company-wide conspiracy. However, if one discriminator or retaliator spoils the soup for the rest of his jobs, then that's enough. And in this particular case, Vojtacek, Nashman, and Rothwell, the high-ranking folks who were involved in the issue with Claremont the first time around, the high-ranking folks who were allegedly trying to help him get a second job, could have done and said enough to spoil the soup for Mark Skiba. We know what HR was telling people about Mark Skiba privately, as opposed to what it was telling Mark Skiba directly. And that's in Rothwell's email to his supervisor, in which he tells his supervisor that Skiba is a later career person, he doesn't present well in interviews, and he's probably better suited to work in a non-management position as a clerk. If HR is telling that to the hiring managers and to the people who are ostensibly charged with making the decision, then the message is clear. Retaliation, age discrimination, is obviously unlawful, and nobody would say it explicitly. No one would reasonably say it explicitly. It's the implicit statement that nobody wants him. That was Jim Vojtacek's email about Skiba. There was no dispute that there were management jobs available. There was no dispute that Skiba had the qualifications to fill those management positions. The reason he wasn't getting the job is what Vojtacek, in his email to Nashman and Rothwell, said. Nobody, quote, wants him, end quote. And it is true that discrimination cases get dismissed on summary judgment because the employer comes forward with legitimate reasons. Well, what is the legitimate reason for saying no to an employee with 40 years of experience, with an unblemished work record, who had been promoted by this very same employer? The inference is nobody wants him, not for legitimate reasons, but for illegitimate reasons. And that's an inference that, on summary judgment, a jury gets to make. Do you want to save some time for us? Yes, I see I am out of time. Thank you very much. Thank you, Mr. Cole. Ms. Robbins. May it please the Court, my name is Holly Robbins. I represent Illinois Central Railroad Company in this suit filed by Mark Skiba, who is a current employee with the railroad. The district court here properly granted summary judgment. Mr. Skiba was a railroad worker who had a supervisory position in the motive power department that was eliminated in 2013. He had been promoted to that department by Mr. Vojtacek just a couple of years earlier, when he was only a couple of years younger. And that, in and of itself, goes to the age claim. In 2013, that position was eliminated, and that issue is outside of the statute of limitations for this case. But it does seem to keep coming up in the plaintiff's brief, in the appellant's brief, and so I think we need to address it, because we have this position, motive power supervisor, it's eliminated in 2013. He applies for some other positions also at that time. He is told, before the statute of limitations starts, or the period begins, that he is not hired for certain other positions, and he is offered a clerk position, which he accepts. He then sort of tries to key his claim off of actually starting as a clerk, but that is not the adverse job action to the extent there is one here. So I want to be able to put those issues aside, because they are outside of the statute of limitations. As the court had pointed out, one of the remarkable things about this case is just the sheer number of jobs that Mr. Skiba applied for. Some of those jobs he applied for, again, outside of the statute of limitations, and was informed outside of the statute of limitations of the result. Some of those jobs he applied for even before he was told that that motive power position had been eliminated. Do we have, counsel, factual issues about when he received notice about the various denials? I don't think we do. Especially with respect, I think there are certain positions for which it is very clear that he had received the denials. I think there are other positions for which he plainly did not receive denials before the statute of limitations period. So I do think there are certain cutoffs for some of those things. He does, I think, try to make a little bit murky some of these things surrounding the time that he applied for that motive power position, but there are emails in the record that say you didn't or you did get this position. To the extent that there aren't, we're not making an issue of the statute of limitations for those particular positions. With respect to those 80 jobs, there are some that are time barred. There are some that actually he applied for in, for example, 2015, well after he filed his charge in this particular case. He's filed several other charges since then, so those would be covered perhaps by other charges, but they shouldn't be by this one. And there is a chart in the record, I think, that kind of shows some of this timing. He was not qualified for some of the positions that he applied for, and he admits that, so that kind of takes those positions out of the mix. And then there are other positions for which Illinois Central has provided legitimate non-discriminatory reasons. This is not, in fact, a case where there is some kind of a company-wide conspiracy, or even where the opinions of the three individuals, Mr. Rothwell, Mr. Vojtacek, or Mr. Claremont, mattered for most of the hiring decisions that were made. In fact, I don't think Mr. Vojtacek or Mr. Claremont really had much of anything to do with any positions, and Mr. Rothwell was plainly trying to help him find a position in the company. Mr. Vojtacek, as I said, had actually hired Mr., or promoted Mr. Skiba, and to the extent, there is some comment made about, comments that Mr. Vojtacek made during that hiring decision, but he was hired. So to the extent he asked Mr. Skiba about his age during an interview two years before the decision on the motor power position. Which is time-barred anyway. I'm sorry? That claim is time-barred anyway. That claim is time-barred anyway, and it really doesn't have anything to do with this, and it didn't matter because he promoted him. So the approach of the plaintiff seems to be that he applied for so many jobs that there must be some kind of discrimination. And I think the arguments are a little bit long on grandiose statements and short on actual details about what actually, what the statements are that are supposedly showing discrimination, or where is this dishonesty that the plaintiff is alleging. What do we make out of this careful phrase later career person email? Yeah, I guess what I make of that. Sounds like a euphemism for age. What I make of that is that Mr. Rothwell wanted to make sure that he was finding a position for somebody who had a longer career. That's what you might tell a jury. Why is it unreasonable to treat that as a euphemism for a reference to his age? Well, I think there are a couple of different issues there. One is that if you met Mr. Skiba, it's going to be obvious what his age is anyway. So I don't think that there's really that much of an issue with age discrimination cases often of knowing that someone is older or younger. That is a fact. But in any event, later... On that kind of theory, counsel, repeated references in hiring records to age or to race or to gender or to disability would draw no particular scrutiny from the courts? No, I think a repeated reference would indicate that this is an area of focus. A simple reference like this is A, a stray remark. B, I do think it indicates that I'm trying to find this guy a job. And C, it doesn't really say age. District Court addressed this issue. It rather says this is a person who has a long career. There are two different things. They may be things that have a correlation, but he's not saying this is an old guy. Yeah, true. But I'll tell you, there are railroad workers who started when they were 18 and they've been working for a long time with the company. So they have 20-year careers and they're still not in a protected class in terms of age. So I do think that that is a distinct, that the career issue is distinct from the age issue despite the correlation that can exist. And I also don't think there's anything about Mr. Rothwell's email that would indicate a nefarious intent in making that comment. And certainly not in the whole, if you look at the totality of the circumstances of Mr. Rothwell and what he tried to do. He did attempt to get this fellow a job and the guy got a job too. He got a job as a clerk. It wasn't the job that he wanted, but it was a job that he got. I've always looked at this case. It's interesting to hear opposing counsel say that the heart of this case is a retaliation case because I always kind of looked at it as an age discrimination case primarily. And the national origin claim, unfortunately we have had to litigate all the way here despite the fact that it really doesn't have much substance. The retaliation claim that has had more focus this morning, there are a couple of issues that I wanted to point out on that. One is that that claim was never raised with the EEOC. And so Mr. Skiba failed to exhaust his administrative remedies. There are two boxes checked on his charge. Neither of them is the retaliation box. Who checks the boxes? I believe that's the individual or what the individual tells the EEOC. The interviewer? I'm sorry? The interviewer. The interviewer, could be. But Mr. Skiba was represented at the time. And also the description of the claim says nothing about a complaint. That is the first element of a retaliation claim. So for Illinois Central to know that this was a retaliation claim was not possible at this time. Because that is not in the claim. It's not said anywhere there. And that may be not surprising because he never made a complaint of age discrimination or national origin discrimination. The closest thing we get is one line that says I may be in a protected status. And I think one of the interesting things that we saw is that in the briefing on this matter, in the first set of, on the primary briefs from the appellate, there is no reference even to that issue. So that came in on the second set of briefs from the appellant, I believe. And that particular line, I may be in a protected status, doesn't tell us I think I was discriminated against. It tells us I may be in a protected status, which again is something that the company knows. I think I'm, in conclusion, this is a case where the district court got it right. The company had good reason for all of its decisions here. And we ask that the court affirm the decision. Thank you. Thank you, Mr. Coburn. Thank you. Very briefly, the reference to the email to Director Vujicic, February 4th, 2013, appears on page 11 of appellant's opening brief, contrary to what counsel just described. Illinois Central has pressed the issue that what HR was doing in this case was trying to help Mr. Skiba find a job. Respectfully, that's an inference that Illinois Central is drawing from the evidence. If you read those emails, it is equally clear that the inference that can be drawn is that they were not trying to help him find a job. They were going through the motions. There is nothing in those emails to talk about his extensive experience. Look at this employee. He's had a lot of work with us. He knows the system. You should interview him. There is no effort to help him get a job. There's an effort to create a paper trail to make it look like he was getting a job. Counsel brought up the fact that Jim Vujicic's statement in the interview, how old are you, there should not be an inference of age discrimination from that statement because he was hired. The inference equally is that employers, when they need somebody to fill a job, hire the person they need. It's when they have a choice about whether they really need somebody to have a job that they choose an improper discriminatory factor. In this case, we believe the evidence is clear that a jury should decide that. Thank you, Ms. Cohen. Thank you, Ms. Robbins. The case is taken under advisement.